IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TODD COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 0016 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NORTHWESTERN UNIVERSITY | ) | |
| | ) | |
| Defendant. | ) | |
| MITCHELL WEBBER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 5233 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| KATARZYNA KRAMARZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 6079 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In these three related cases, plaintiffs, one former and two current Northwestern University Police Department ("NUPD") police officers, allege that defendant Northwestern University ("Northwestern") improperly disciplined them for making inappropriate comments about homosexuals while en route to a Northwestern football game. Plaintiff Todd Collins was

employed as a police sergeant for Northwestern until he voluntarily resigned on February 7, 2014. Collins asserts claims for Title VII reverse race discrimination (Count I), violation of 42 U.S.C. § 1981 (Count I), breach of contract (Count II) and violation of the Due Process Clause of the United States Constitution (Count III). Plaintiff Mitchell Webber is a white NUPD police officer. Webber asserts claims for Title VII reverse race discrimination (Count I), Title VII retaliation (Count II), violations of the Due Process and Equal Protection Clauses of the United States Constitution (Counts III, IV, and V), violations of 42 U.S.C. § 1981 (Counts I, III, IV), breach of contract (Count VI), and tortious interference with prospective economic advantage (Count VII). Plaintiff Katarzyna Kramarz is a white NUPD police officer and former detective for the NUPD. She asserts claims for Title VII race and gender discrimination (Counts I and II), Title VII Retaliation (Count III), violations of the Due Process and Equal Protection Clauses of the United States Constitution (Count IV, V, and VI), violations of 42 U.S.C. § 1981 (Counts IV and V), and breach of contract (Count VII).

Northwestern has moved to dismiss all but Count I of Collins's complaint, all except Count I and the 42 U.S.C. § 1981 claims of Webber's complaint, and all of Kramarz's complaint, except the 42 U.S.C. § 1981 claims and those portions of Counts I and II that relate to discriminatory acts that occurred after May 18, 2013. For the reasons described below, Northwestern's motions to dismiss are granted in part and denied in part.

## FACTS

Northwestern is a private university and oversees its own police force, the NUPD. On or about September 21, 2013, plaintiffs were assigned to work at a Northwestern football game. En route to the stadium, Officer McConnell, another officer assigned to the game, confronted

2

Kramarz accusing plaintiffs of engaging in what he believed were inappropriate comments and behavior. McConnell lodged a complaint against plaintiffs with Northwestern's Sexual Harassment Prevention Office. Joan Slavin, Northwestern's Director of Sexual Harassment Prevention and Title IX Coordinator, investigated the incident. Part of the investigation included each plaintiff, without their attorneys, meeting with Slavin and a human resources consultant

On November 12, 2013, Slavin separately emailed plaintiffs notifying them that she had completed her investigation and reached certain conclusions based on her findings. Specifically, she found that plaintiffs had violated Northwestern's Policy on Sexual Harassment ("Sexual Harassment Policy") by engaging in unwelcome and inappropriate comments and conduct of a sexual nature, and violated Northwestern's Policy on Discrimination and Harassment ("Discrimination Policy") by mocking gay men. Slavin explained that she had notified the NUPD administration of her findings and that the NUPD would work with Northwestern's human resources department to determine what corrective or remedial actions were appropriate.

Plaintiffs appealed Slavin's findings to Pamela Beemer, Northwestern's Associate Vice President for Human Resources. In her response, Beemer explained that she reviewed the investigation and concluded it was done in accordance with Northwestern's Sexual Harassment Policy and Discrimination Policy. Beemer determined that Slavin had conducted a thorough and complete investigation and reached an appropriate conclusion.

The NUPD administration disciplined plaintiffs based on Slavin's findings. Specifically, Collins was given a three-day suspension without pay, shift change, demotion from sergeant position, six-month proscription from applying for promotion, and final written warning. Collins voluntarily resigned on February 7, 2014. Webber was given a three-day suspension without

pay, shift change, six-month proscription from applying for a promotion, and final written warning.  Kramarz was given a three-day suspension, shift change, removal of detective duties, removal of field training officer duties, removal of duties of sexual assault investigator, six-month proscription from applying for a promotion, and final written warning.

Plaintiffs individually filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2014 (Kramarz), April 3, 2014 (Webber), and July 17, 2014 (Collins), and obtained right to sue letters.

## **LEGAL STANDARD**

Northwestern has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss portions of each plaintiff's complaint for failure to state a claim upon which relief can be granted.  In evaluating a motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits.  Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive such a motion, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face.  Twombly, 550 U.S. at 555.  To be plausible on its face, the complaint must plead facts sufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**1. Plaintiffs' 42 U.S.C. § 1983 Claims**

Each plaintiff has brought claims against Northwestern alleging that its disciplinary actions violated the Due Process and Equal Protection Clauses of the United States Constitution. These claims are all brought pursuant to 42 U.S.C. § 1983. To state a valid claim for relief under § 1983, plaintiffs must establish that they were deprived of a constitutional right or a right secured by federal law, and that the alleged deprivation was committed under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); Padula v. Leimbach, 656 F.3d 595, 600 (7th Cir. 2011). Each plaintiff alleges that the personnel investigations into the incident were unfair because plaintiffs were prohibited from bringing a lawyer, examining witnesses, or presenting evidence prior to their discipline decisions.

Northwestern has moved to dismiss these claims, arguing that it is a private university and did not act under "color of law" when it disciplined plaintiffs.[1] Plaintiffs argue that even if Northwestern may generally be considered a private actor, it was acting under "color of state law" through the NUPD. The court disagrees.

Generally, a plaintiff may not sue a private university under § 1983 because the statute does not protect individuals from purely private actors' conduct. See McDaniel v. Loyola Univ. Med. Ctr., 2014 WL 4269126, at *9 (N.D. Ill. 2014). Private actors, however, may become state actors in several ways, including when the state delegates a public function to a private entity or when the state "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision." Johnson v. LaRabida Children's Hosp.,

---

[1] For these motions' purposes Northwestern concedes that the NUPD carries out police powers on campus and derives its law enforcement authority from state statutes.

5

372 F.3d 894, 896 (7th Cir. 2004). Northwestern argues that there is no nexus between the actions of the Offices of Sexual Harassment Prevention and Human Resources and any traditionally state-operated police powers. Northwestern cites to <u>Allocco v. City of Coral Gables</u>, 221 F. Supp. 2d 1317, 1374-75 (S.D. Fla. 2002) <u>aff'd</u>, 88 Fed. Appx. 380 (11th Cir. 2003), in which the court held that the termination of private university safety officers was not state action because the alleged unconstitutional conduct resulted from the university's conduct as an employer, not its police powers. "[T]he action about which plaintiffs complain concerns personnel matters, which do not satisfy the public function test for state action." <u>Id</u>.

Plaintiffs, however, contend that private actors' employment decisions can constitute state action when the actor performs duties typically and exclusively reserved to the state. They rely on <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 348 (4th Cir. 2000), in which the Fourth Circuit held that a private volunteer fire company was a state actor because it performed duties typically reserved to the state. <u>Id</u>. Further, since it was a state actor, "it would be difficult to conclude that personnel decisions reached during the performance of that public function were not subject to constitutional strictures." <u>Id</u>.; <u>see</u> <u>also</u> <u>Janusaitis v. Middlebury Volunteer Fire Dept.</u>, 607 F.2d 17 (2nd Cir. 1979). Plaintiffs argue that, like the fire company's duties in <u>Goldstein</u>, police forces are primarily a state municipal function. <u>Spencer v. National R.R. Passenger Corp.</u>, 141 F. Supp. 2d 1147, 1149 (N.D. Ill. 2001). Therefore, according to plaintiffs, Northwestern is a state actor for purposes of § 1983's "under color of state law" requirement.

Plaintiffs' cases are distinguishable from the instant case. The court must consider the totality of the circumstances when a private entity is charged with acting under the "color of

law." Skinner v. Railway Labor Executives' Assoc., 489 U.S. 602, 614-15 (1989). The fire departments in Goldstein and Janusaitis were organized for the sole, exclusively governmental purpose of providing a public safety function. In neither case, was the fire department part of a larger wholly private entity. Unlike the fire departments in Goldstein and Janusaitis, the NUPD is not a separate entity, but simply a department of a private university. Here, Northwestern's human resources department investigated the incident, disciplined plaintiffs and then referred the matters to the NUPD.

Beemer and Slavin, neither of whom are members of NUPD, carried out the investigation leading to the disciplinary actions at issue. NUPD administrators, Northwestern's Office of Sexual Harassment Prevention, and Northwestern's Human Resources Office handled the actions as personnel matters. These personnel functions are not historically the sole prerogative of the state. The human resources department determined and implemented plaintiffs' punishments and referred its findings to the NUPD for implementation.

The totality of the circumstances does not support a finding that a private university's human resources department serves an exclusive governmental function. Therefore, the human resources department cannot act "under the color of law" when investigating and disciplining employees for university policy violations. Consequently, Northwestern did not act under the "color of law."

Because Northwestern is not a state actor, its motions to dismiss are granted as to the portions of plaintiffs' claims that are brought pursuant to § 1983 contained in Count III of Collins's complaint, Counts III through V of Webber's complaint, and Counts IV through VI of Kramarz's complaint.

## 2. Plaintiffs' Breach of Contract Claims

Each plaintiff has also alleged a breach of an employment contract. Northwestern has moved to dismiss these claims because plaintiffs were at-will employees with no contract. Plaintiffs allege that Northwestern breached the contract that was created by the NUPD (Evanston – Chicago) Rules and Regulations ("Rules"). Illinois law provides that employee handbooks or policies may create enforceable contracts only under certain conditions: (1) the language must be clear and promissory in nature; (2) the statement must be disseminated so that the employee is aware of the promise; and (3) the employee must accept the offer by commencing or continuing to work. Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 115 Ill.2d 482, 490 (Ill. 1987).

In their first amended complaints, plaintiffs allege that the Rules create a contract between Northwestern and plaintiffs. Specifically, plaintiffs contend that the Rules contain mandatory language and do not contain disclaimers expressly denying the existence of a contractual relationship between the parties.[2] Northwestern argues that this is not enough to create an enforceable contract between the parties.

Under Illinois law, employer-employee relationships are presumed to be at will. Kiddy-Brown v. Blagojevich, 408 F.3d 346, 363 (7th Cir. 2005). Additionally, courts have held that at-will employees of private employers do not have property interests in their employment. See e.g., Flynn v. Kornwolf, 83 F.3d 924, 926 (7th Cir. 1996). To overcome this presumption, an

---

[2]In their Responses to Northwestern's Motions to Dismiss, plaintiffs concede that the Northwestern Staff Handbook and Northwestern Policy on Discrimination do not create contractual relationships between Northwestern and its employees.

8

employee must demonstrate that a contract for continued employment was formed. Northwestern argues that plaintiffs fail to allege that there was an enforceable contract because the Rules' language does not meet the Duldulao test's first prong, and even if it did, plaintiffs do not specify the violated contract provisions.

In Duldulao, 115 Ill.2d at 491, the court concluded that an employee handbook containing specific grounds for discharge constituted a contract between the employee and the hospital where the handbook provided that:

> Permanent employees <u>are never</u> dismissed without prior written admonitions and/or an investigation that has been properly documented … and three warning notices within a twelve-month period <u>are required</u> before an employee is dismissed, except in the case of immediate dismissal.   [Emphasis added by the court.]

Plaintiffs argue that the Rules create an enforceable contract because they contain obligatory language similar to the Duldulao language.[3] Plaintiffs argue that the terms are binding on the officers and the NUPD administration because the Rules' first page provides that the Rules "are … binding upon both full- and part-time members."

Northwestern argues that plaintiffs rely on isolated language in the Rules, which consists of:  a listing of binding conduct expectations; a recitation of conduct that violates the rules; notification that disciplinary action – if taken in the NUPD's discretion – shall be recorded on a particular form and distributed to certain individuals; and that a deadline for the submission of disciplinary action is received.  Courts have held that this type of language does not create

---

[3] Plaintiffs rely on language in Part A of the Rules, which states that "[a]ll members shall comply with all university policies, state laws and federal laws relating to discrimination." Plaintiffs also rely on language in Part D of the Rules, which they claim "sets forth a highly detailed set of procedural rules for conducting appeals and hearings, that 'must' be employed."

contractual obligations when all of the other relevant policies and rules use permissive language. See e.g., Weiss v. New York Life Ins. Co., 1995 WL 115520, at *3 (N.D. Ill. 1995) (holding that isolated mandatory language did not convert terms of an employee manual to contractual obligations where permissive language was used throughout the remainder of the relevant policies).

Northwestern also cites to Thomas v. Maryville Acad., 375 F. Supp. 2d 687, 689 (N.D. Ill. 2005), in which the court stated that the mandatory language in a manual's harassment policy simply stated the employer's legal obligations, and did not create an enforceable contract for continued employment. Similarly, Northwestern argues that the Rules' provisions that provide that "[a]ll members shall comply with university policies, state laws and federal laws" merely restates Northwestern's pre-existing legal obligations and fails to form the basis for a contract.

When the Rules are viewed as a whole, it is clear that plaintiffs rely on language that is more akin to a listing of binding employee conduct expectations. Plaintiffs rely on passages that promulgate policies regarding employee conduct and a description of the disciplinary measures. These alone do not create contractual obligations on Northwestern's behalf. Without other documentation, there are no contractual obligations between Northwestern and plaintiffs regarding the termination of their at-will employment or other disciplinary measures.

Consequently, Northwestern's motion to dismiss is granted as to Count II of Collins's complaint, Count VI of Webber's complaint, and Count VII of Kramarz's complaint for failure to state a claim because the Rules do not create an enforceable agreement.

### 3. Webber and Kramarz's Retaliation Claims

Webber and Kramarz assert claims for Title VII retaliation. Webber alleges that after he filed his EEOC charge, he was given negative performance reviews, denied overtime pay, and Northwestern denied or interfered with his pursuit of other job opportunities. Kramarz alleges that after she filed her EEOC charge, she was given negative performance reviews and substandard pay and denied overtime pay.

A plaintiff in a Title VII action may bring only claims that were included in his EEOC charge or that are "like or reasonably related to the allegations . . . and grow[] out of such allegations." See Swearnigen-El v. Cook Cnty. Sheriff's Dept., 602 F.3d 852, 864 (7th Cir. 2010) (quoting McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 481 (7th Cir. 1996)) (internal quotations omitted). Under this standard, the "EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994). Northwestern argues that plaintiffs' retaliation claims are precluded because they failed to raise them in their original EEOC charges. Further, Northwestern argues that these claims fail because the alleged retaliatory acts involve different conduct and different individuals than the alleged acts in their original EEOC charges.

The Seventh Circuit has held that courts have jurisdiction to decide Title VII retaliation claims arising from retaliatory acts that follow and result from the initial filing of the EEOC charge. See McKenzie, 92 F.3d at 482-83. Northwestern acknowledges that "the alleged[] retaliatory conduct [began] after [plaintiffs] [had] filed charge[s] of discrimination with the EEOC." Consequently, Northwestern's motions to dismiss are denied.

**4. Webber's Claim for Tortious Interference**

Webber also asserts a state law claim of tortious interference with prospective economic advantage in Count VII of his complaint. To state a claim for tortious interference under Illinois law, a plaintiff must allege: (1) a reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectation from ripening into a business relationship; and (4) damages to the plaintiff resulting from the interference. Davidson v. Schneider, 2014 WL 656780, at *5 (N.D. Ill. 2014). Northwestern argues that Webber has failed to plead a reasonable expectation of entering into a valid contractual relationship with the Evanston Police Department ("EPD") because he relies solely on a job prospect, not a job offer.

Webber contends that his allegations are objective enough to be legally protectable. He alleges that an anonymous EPD member advised him that he was ranked third of 56 candidates after the objective portions of the application process and that there were several openings. Webber further alleges that he ultimately did not receive a job offer from the EPD because someone at the NUPD gave the EPD background investigating officer "negative" information about him.

Webber argues that his ranking created a sufficiently reasonable expectation of employment to fulfill the requirement for tortious interference. He relies on McGreal v. Vill. of Orland Park, 2013 WL 3984477, at *10 (N.D. Ill. 2013), in which the court held that an officer's allegation that "he was first in line to be hired for an open position" was sufficient to create a "reasonable expectancy of employment." Webber also refers to McDaniel, 2014 WL 4269126, at *11, where the court held that the plaintiff's allegation that the Mayo Clinic ranked him

second, which "virtually ensur[ed] that he would receive a fellowship offer," was sufficient to establish a reasonable expectancy.

Northwestern argues that McGreal and McDaniel are inapposite because the plaintiffs in both cases had more objective evidence than Webber. In McGreal, the court rejected all of the plaintiff's claims of tortious interference except for his claim that he was in the final stage in the application process and was "first in line to be hired for the open position" at a police department, for which he was ultimately not selected. McGreal, 2013 WL 3984477, at *10. Similarly, in McDaniel the court rejected the plaintiff's claims related to his placement where he was told that "he was seriously being considered for placement," as being overly subjective. McDaniel, 2014 WL 4269126, at *12. The court, however, did not dismiss his allegation that he had received a fellowship offer from one institution, which was revoked, and that he was ranked second by another institution with open positions. Id. at *11-12.

Northwestern argues that Webber's allegations are too subjective to be legally protectable. In Anderson v. Vanden Dorpel, 172 Ill.2d 399, 408 (Ill. 1996), the Illinois Supreme Court held that a job prospect is not a sufficient expectancy, even for the "leading candidate." Unlike McGreal, where the plaintiff was the first on the list to be hired at the end of the process, and McDaniel, where there was an actual offer, Northwestern argues that Webber alleges only the possibility of an offer. Specifically, in his complaint, Webber alleges that he was third on a list before the process was complete. Further, Northwestern argues that he fails to allege any objective facts suggesting that "at least three openings or vacancies at th[e] [EPD] remained unfilled" at the end of the background check.

13

Webber's allegations, although inartfully pled, are sufficiently analogous to the McGreal plaintiff's claim of being "first in line to be hired for an open position." Here, Webber had just as much certainty in his position, absent the alleged negative information from the NUPD, because he was ranked third and the EPD had at least three openings. Therefore, Northwestern's motion to dismiss is denied as to Count VII of Webber's complaint because he alleges a reasonable expectancy of employment.

### 5. **Kramarz's Claims for Title VII Race and Gender Discrimination**

Kramarz also asserts claims for Title VII race and gender discrimination in Counts I and II of her complaint. She alleges that as early as 2012 she was subjected to disparate treatment including: not being allowed to display a detective's badge; being told to report to work in uniform despite NUPD detectives historically being plain clothes officers; not being issued an NUPD cell phone; and receiving an unduly negative performance evaluation. In her EEOC charge, however, Kramarz alleged only that in 2014 the Director of the Office of Sexual Harassment Prevention and the Vice President of Human Resources treated her unfairly during the investigation into the complaints lodged against her.

Northwestern argues that Kramarz's 2012 events are time-barred because they are individual discrete acts that required her to act within 300 days of filing her EEOC charge, and therefore should be dismissed. Because she filed her EEOC charge on March 14, 2014, any complained of act must have occurred no earlier than May 18, 2013. Kramarz argues that the 2012 acts are not time-barred, and are properly incorporated, because they contributed to an ongoing hostile work environment.

14

For the purposes of this motion, 42 U.S.C. § 2000e-5(e)(1) requires an employee to file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. "Discrete discriminatory acts are not actionable" if they are not filed within 300 days of the acts' occurrence. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Chaudhry v. Nucor Steel-Indiana, 546 F.3d 832, 836-37 (7th Cir. 2008). Alternatively, hostile work environment claims have more lenient filing deadlines because they involve repeated conduct. See National Railroad Passenger Corp., 536 U.S. at 115. In considering a hostile work environment claim, the court may "review all such [discriminatory] conduct, including those acts that occur outside the filing period. … [So long as] an act contributing to the claims occurs within the filing period the entire time period of the hostile environment may be considered by a court for purposes of determining liability." Id. at 116-17.

Northwestern contends that attempting to combine the discrete acts from 2012 with the 2013-14 events and labeling them a hostile work environment claim does not resolve the untimely nature of Kramarz's allegations. Northwestern cites to Tinner v. United Ins. Co. of Am., 308 F.3d 697, 707-09 (7th Cir. 2002), where the Seventh Circuit, relying upon National Railroad Passenger Corp., held that to justify treating separate violations as an ongoing violation, a plaintiff must show that it would have been unreasonable to expect her to sue separately on each alleged violation before the statutes ran on the conduct. To make this determination, the court must consider: (1) whether the acts involve the same subject matter; (2) the frequency with which the acts occur; and (3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert her rights. Id. at 708.

15

Northwestern argues that Kramarz does not satisfy these considerations because the 2012 events and the 2013-14 events were attributed to different individuals. Kramarz admitted that she was aware that her promotion "was handled differently," but there was then a gap of at least one year before she alleges that she was subjected to the disparate treatment that triggered her EEOC charge. Northwestern argues that the events mentioned in her EEOC charge are also unrelated to the 2012 acts because they were part of a separate department's sexual harassment investigation. Therefore, Kramarz's claims for the 2012 events are not sufficiently related to provide background for her claims and are time-barred.

The court agrees. There is no sufficient relation between the events so as to permit a timely claim for the 2012 events. The events that occurred prior to May 18, 2013, are not actionable. Therefore, Counts I and II of Kramarz's complaint are partially dismissed to the extent that they are premised upon events prior to May 18, 2013. Whether the events that occurred prior to May 18, 2013, are admissible as evidence to support the timely claims will be decided at a later date.

## **CONCLUSION**

For these reasons, the court finds that plaintiffs' complaints fail to state a claim upon which relief may be granted in several counts. Northwestern's motion is granted in part. Northwestern's motion to dismiss Collins's complaint as to his claims for breach of contract (Count II) and violation of the Due Process Clause of the United States Constitution (Count III) is granted. Northwestern's motion to dismiss Webber's complaint as to his claims for violations of the Due Process and Equal Protection Clauses of the United States Constitution (Counts III, IV, and V) and breach of contract (Count VI) is granted. Northwestern's motion to dismiss

16

Kramarz's complaint as to her claims for race and gender discrimination (Counts I and II) as they relate to any acts before May 18, 2013, violations of the Due Process and Equal Protection Clauses of the United States Constitution (Count IV, V, and VI), and breach of contract (Count VII) is granted. Northwestern's motion to dismiss Webber's complaint as to his claim for tortious interference with prospective economic advantage (Count VII) is denied. Northwestern's motions to dismiss plaintiffs' claims for Title VII retaliation in Count II of Webber's complaint and Count III of Kramarz's complaint are denied. Its motion is also denied as to Counts I and II of Kramarz's complaint as it relates to acts that occurred after than May 18, 2013.

Plaintiffs are directed to file amended complaints conforming to this order on or before March 17, 2016. Defendant's answers shall be filed by April 7, 2016. The parties are ordered to submit joint status reports using this court's form on or before April 11, 2016. This matter is set for a status report on April 19, 2016, at 9:00 A.M.

**ENTER:    February 24, 2016**

_____

**Robert W. Gettleman**
**United States District Judge**